OPINION
Defendant-appellant Bruno Graff appeals from his jury conviction for murder.
On March 25, 1998, defendant was indicted for purposely causing the death of his neighbor, Jonell Ficzeri, six months earlier on September 4, 1997. On September 4, 1997, defendant called 911 from the victim's home and reported that she was unconscious. He told the responding EMS and fire department personnel that she had taken a drug overdose. The victim was resuscitated and transported to Metro General Hospital where she was determined to be brain dead. Her remaining organs died approximately one and one-half days later when she was removed from life support systems.
During the course of an autopsy, the Coroner's office discovered that the victim had a bruise on the top of her head. An examination of her brain tissue revealed a brain stem injury and brain swelling. The Coroner ruled that her death was caused by a blunt impact to her head with resulting brain injuries. The force of the blow to her head injured her brain stem and caused her heart and breathing to stop.
Cleveland police investigated the matter at the request of the Coroner's office. Defendant ultimately provided four different versions of the events to the police. He first stated that the victim called him from her house, complained of not feeling well, and hung up quickly. He stated he went to her house, found her unconscious, and called 911. Defendant was interviewed a second time after the police had obtained telephone records and the autopsy results. Defendant kept to his original story until he was told the victim called him twice that day. Then he denied striking her with his cane.
Defendant's third story was that the victim came to his house to buy pain pills, Tylenol 4 with codeine. He stated she bought two pills and returned home to get more money. She then called him a second time and that is when he went to her house, found her unconscious, and called 911. When confronted with the long delay before the 911 call, defendant provided a fourth version of events.
This time he stated that when the victim came to his house to buy the pain pills, she went into his bathroom. An unknown Puerto Rican male came over and started talking with defendant. Approximately twenty minutes later, defendant checked on the victim and found her unconscious. The Puerto Rican male freaked out and left. Defendant then carried the victim to her house and called 911.
The prosecution presented sixteen witnesses at trial to prove that defendant murdered the victim. Dr. Heather Raaf of the Coroner's office testified about the autopsy she performed on the victim. She stated that the immediate effect of the blow to the middle top of the victim's head was to send a shock waive through her brain, damage her brain and brain stem, cause her heart and breathing to stop, and render her unconscious.
Although the object that made the blunt force injury to her head did not leave a signature, the two and one-half by two and one-quarter-inch bruise was consistent with a blow caused by defendant's cane or crutches, which were admitted into evidence. Raaf stated the injury was not consistent with an accident because of its location on the top of her skull and the size of the shock and damage to the victim's brain. Accidental injuries from bumping one's head typically occur near or below the hatband of the head and do not involve as much force as occurred in this case.
The EMS and firefighter who responded to the 911 call testified that the victim did not sustain the head injury during transportation to the hospital. The victim's boyfriend, brother, sister, and daughter stated that she did not mention any injury to her head, although they spoke with her earlier that day and she frequently complained about medical conditions. On the day of the incident, defendant twice told the victim's brother not to mention defendant's name as having been involved in the situation.
Three neighbors also testified. Nina Andreychuck testified that, while sitting in her yard, she saw defendant carry the victim's unconscious body to the victim's house. She did not see any Puerto Rican male. Another neighbor later saw defendant walk back to defendant's house just as the firefighter who responded to his 911 call was looking to talk to him. The neighbor who shared the duplex with defendant stated that he went out of his way to talk to her, although he avoided talking to her on other occasions, to tell her the story that the victim overdosed.
Defendant's landlord stated the defendant lived alone in his residence. An Ameritech records custodian testified concerning the telephone calls made from the victim's telephone on the day of her death. Detective Jack Bornfeld testified concerning his investigation of the murder and the four different stories defendant told him.
Defendant did not testify himself, but presented medical opinion testimony from Dr. Mark Cohen. Dr. Cohen testified that it would be very unusual for a blow to the top of the head to cause brain stem injury. He did not believe the blow in this case caused the victim's death.
The prosecution presented rebuttal testimony by deputy coroner Dr. Marta Steinberg. Her testimony was consistent with Dr. Raaf's. She stated that Dr. Cohen viewed the brain tissue slides for only thirteen minutes.
Following closing arguments, the trial court instructed the jury, which returned a verdict finding defendant guilty of murder. Through newly appointed appellate counsel, defendant timely appeals. He and his appellate counsel each raise three assignments of error.
 I
Appellate counsel's first, as well as defendant's first pro se supplemental, assignment of error challenges the trial court's jury instructions as follows:
 THE TRIAL COURT'S JURY INSTRUCTIONS WERE PLAINLY ERRONEOUS AND PREJUDICED THE APPELLANT IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND COUNSEL WAS INEFFECTIVE UNDER THE SIXTH AMENDMENT FOR FAILING TO ABJECT [SIC] TO SUCH FUNDAMENTALLY FLAWED INSTRUCTIONS.
 THE TRIAL COURT'S JURY INSTRUCTIONS WERE PLAINLY ERRONEOUS AND PREJUDICED THE APPELLANT IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.
These assignments lack merit.
Appellate counsel complains about the trial court's instructions on the element of purpose to cause the victim's death and intending the foreseeable consequences of an action. Because trial counsel did not object to these instructions, appellate counsel contends this constituted plain error or ineffective assistance of trial counsel. Defendant contends that the trial court did not instruct on the presumption of innocence or the jury's obligation to either acquit or convict depending upon its factual findings. He also complains for the first time on appeal that the trial court did not instruct on manslaughter or assault. None of these arguments is persuasive.
The trial court instructed the jury concerning purpose as follows:
 Before the defendant can be found guilty as charged, the State of Ohio must prove by evidence beyond a reasonable doubt that on or about September 4, 1997, and in Cuyahoga County, Ohio, the defendant purposely caused the death of another, to wit, the named victim in this case.
 A person acts purposely when it is his specific intention to cause a certain result. Purpose is a decision of the mind to do an act with a conscious objective please be quiet of producing a specific result.
 To do an act purposely is to do it intentionally and not accidently. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.
 The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means used, and all other facts and circumstances in evidence.
(Tr. 432-433.)
Appellate counsel's first argument is that the trial court did not specifically instruct the jury that at the time he assaulted her defendant must have had the purpose to cause the victim's death. Quite frankly, one would have to ignore the entire course of the proceedings to accept this characterization.
The prosecution's entire case was that defendant purposely caused the victim's death by striking her on the head. The sole wrongful act that defendant allegedly committed was striking her on the head. No other act was alleged to have provided the factual predicate for causing her death. Thus, whatever mental state the jury found to have accompanied defendant's conduct existed at the time of this act.
After reviewing the transcript, we find, contrary to appellate counsel's argument, that the jury knew it was required to find the element of purpose to cause death existed at the time of the assault. No objection, moreover, was made to the trial court's instructions.
We note that the additional instruction proposed for the first time on appeal by appellate counsel would not resolve the alleged ambiguity he seeks to create in the instructions delivered by the trial court. Appellate counsel argues the trial court should also have given the following instruction from Ohio Jury Instructions, 409.01(2):
 It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to [cause the victim's death].
This instruction would not have clarified when defendant's purpose to cause the death must have existed.
The phrase "at the time in question" is ambiguous. When divorced from the facts of the case as appellate counsel seeks, this phrase could refer to any of the questionable events that led up to and followed her death; it could mean any time before, during, or after defendant struck the victim in the head. Thus such an instruction would not have specified any more precisely than the instructions already given by the court that his purpose to cause death had to accompany the act of striking the victim in the head.
Under the circumstances, we do not find plain error or that defense counsel was ineffective for failing to object to the instructions given. When viewed in the context of the entire case, the instructions adequately informed the jury that defendant's purpose to cause death had to accompany his act of bludgeoning the victim's head. Any error in the instruction did not constitute plain error or provide the basis for a claim of ineffective assistance of counsel, because the result of trial would not have been any different had the requested, or even a more specific, instruction been given.
Appellate counsel's remaining argument is that the trial court gave an instruction which made defendant responsible for the "natural and foreseeable consequences" of his conduct. He argues that defendant is criminally responsible only for what he intends, not for the "natural and foreseeable consequences" of his acts. He argues the trial court should not have given this instruction and trial counsel failed to cite State v. Burchfield (1993), 66 Ohio St.3d 261, which disapproved the indiscriminate use of a prior version of the Ohio Jury Instructions concerning this issue.
The Ohio Supreme Court, this court, and other appellate districts, have repeatedly addressed and rejected this argument. State v. Stojetz (1999), 84 Ohio St.3d 452, 465; State v. Phillips (1995), 74 Ohio St.3d 72, 100; State v. Parker (Apr. 9, 1998), Cuyahoga App. No. 71474, unreported at p. 5; State v. Jenkins (Dec. 24, 1997), Cuyahoga App. No. 68961, unreported at pp. 6-7; State v. Perkins (May 28, 1999), Hamilton App. No. C-971032, unreported at pp. 1-2. Notably, the Burchfield Court also rejected the argument and found the defendant in that case did not show plain error.
We find that defendant has likewise not shown plain error in the case at bar. Id.; Crim.R. 52(B). The challenged Ohio Jury Instruction used in the case at bar has been completely revamped since the Supreme Court's opinion Birchfield. In the case at bar, the trial court instructed the jury as follows:
 The defendant's responsibility is not limited to the immediate or most obvious result of his act or failure to act. The defendant is also responsible for the natural and foreseeable consequences that follow in the ordinary course of events from the act or failure to act.
This revised Ohio Jury Instruction omitted the more lengthy provision in Burchfield which arguably tended to dilute the element of purpose.[1]
As noted above, in the case at bar the trial court provided the following lengthly and detailed instructions concerning the element of "purpose":
 A person acts purposely when it is his specific intention to cause a certain result. Purpose is a decision of the mind to do an act with a conscious objective — please be quiet — of producing a specific result.
 To do an act purposely is to do it intentionally and not accidently. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.
 The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means used, and all other facts and circumstances in evidence.
The challenged instruction regarding consequences in the case at bar did not dilute this required finding of purpose. When the court's instructions are reviewed in the context of the entire case, we find, consistent with this authority, no plain error or ineffective assistance of counsel in the case at bar.
The defense theory at trial was that defendant never struck the victim. If this were true, he committed no crime. Now, for the first time on appeal, his argument is that the evidence might show an intent to cause injury, but not to kill her. Under this theory he suggests that he would be criminally responsible only for what he intended (that is, assault), rather than for the natural and foreseeable consequences of his act (that is, causing her death).
Contrary to defendant's argument, however, the jury was never improperly instructed that it should presume his intent to cause death because the victim's death was foreseeable. The Ohio Jury Instructions have evolved considerably from presumed intent instructions.Instead, the current instructions used in this case were only permissive and permitted the jury to infer from the evidence, including the manner and circumstances of her death, that defendant had the prohibited intent to cause her death. In other words, from evidence that this slight, middle-aged woman was bludgeoned on the top of the skull with a lengthy cane or crutch with such violent force as to inflict grave bodily injury, the jury could find a specific intent to cause death. The court's instructions merely permitted the jury to make this inference from the facts.
The trial court instructed the jury that defendant was presumed innocent, that the prosecution had the burden of proof, that the prosecution had to prove defendant had an intent to cause the victim's death, and that the prosecution had to prove each element beyond a reasonable doubt. The challenged instruction did not improperly detract from any of these instructions.
Defendant's pro se first supplemental assignment of error contends the trial court did not give instructions on the presumption of innocence. He also contends the court did not instruct the jury that it had to (1) acquit him if it found the prosecution failed to prove its case, or (2) convict him if it found the prosecution proved its case. His final pro se brief argues the trial court should have given complete instructions, including instructions of "manslaughter" and "assault." [2]
These arguments are refuted by the record. The trial court instructed the jury on the presumption of innocence. (Tr. 425.) Moreover, the trial court also provided the procedural instructions that defendant contends were omitted. (Tr. 440.) The trial court was not required to recite the latter instructions verbatim from the Ohio Jury Instructions.
Finally, the trial court was not required to instruct the jury on manslaughter, whether voluntary or involuntary, or any degree of assault. Defense counsel did not request such instructions and any such instructions would have undermined the defense theory of the case that defendant never struck the victim. Defendant's trial strategy was to present the jury with an all-or-nothing choice; either he committed murder or he committed no crime at all.
Instructing on alternate theories would have detracted from his defense and invited the jury to reach a compromise verdict which was not supported by the evidence. The record contains no evidence of provocation by the victim to support a voluntary manslaughter charge. Defendant has not identified any misdemeanor he committed to proximately cause the victim's death to constitute involuntary manslaughter. Finally, the fact that the victim died precluded a claim for aggravated, felonious, or simple assault, all of which involve inflicting injury less than death.
Accordingly, appellate counsel's first, along with defendant's pro se supplemental first, assignment of error is overruled.
 II
Appellate counsel's second assignment of error challenges the sufficiency of the evidence to support defendant's murder conviction, as follows:
 THE EVIDENCE IS INSUFFICIENT TO CONVICT THE APPELLANT OF MURDER.
This assignment lacks merit.
Appellate counsel argues that the prosecution proved at most that defendant struck the victim once on the head with a cane or crutch. He contends that such an instrument was not a deadly weapon and that the evidence was insufficient for the jury to find that defendant intended to cause her death. Moreover, he contends that any evidence that defendant subsequently tried to hide his actions did not evince an earlier intent to kill.
The Ohio Supreme Court summarized the standard governing claims that a conviction is not supported by sufficient evidence in State v. Jenks (1991), 61 Ohio St.3d 259, 273, as follows:
 [A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.
* * *
 [T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Id. at 273 (Citations omitted.)
Defendant's argument fails to view the evidence, and the inferences drawn therefrom, in the light most favorable to the prosecution. After reviewing the evidence in accordance with the correct legal standard, we find the evidence is sufficient to support defendant's jury conviction of murder.
Defendant argues that State v. Farmer (1951), 156 Ohio St. 214, supports his argument to the contrary. He quotes syllabus paragraph two of Farmer, which provides as follows:
 If the use of a weapon not likely to produce death or serious bodily harm results in death, such use, in the absence of some other evidence, will not justify a determination beyond a reasonable doubt that there was an intent to kill.
After reviewing both the syllabus and facts of Farmer, however, we conclude that it does not dictate a contrary result.
Farmer involved a capital offense and sentence of death for murder committed while attempting to rob the victim. Farmer stipulated that during the robbery he struck the male victim twice in the head with a stick, which was never found or presented to the jury. The victim was later found unconscious, transferred to a series of hospitals, and died three days thereafter. The Supreme Court held that the use of such a weapon, by itself "without some other evidence," was insufficient evidence of defendant's purpose to kill.
The case at bar does not involve the same paucity of proof as Farmer. Here, defendant used extreme force, striking a woman with a sturdy instrument on the top of the skull, without merely trying to rob her. The severity of the beating, which compressed her brain stem and caused her immediate loss of consciousness, together with the relative size, age, strength of defendant and the victim, support the inference that defendant's purpose in striking the victim was to cause her death.
Defendant's reliance on Farmer ignores that the prosecution in that case failed to prove the extent of the injuries to the victim caused by the blows to his head. No doctor from either hospital to which the victim was admitted testified concerning the victim's injuries or treatment. The Farmer court discussed at length that the undertaker's testimony concerning the condition of the corpse when he picked it up days after the assault did not prove the condition of the body at the time of the beating. Id. at 224-225.
The record in the case at bar, however, contains no such deficiency. An EMS worker and firefighter testified that the victim's head did not strike any object after they resuscitated her and transported her to Metro Health Hospital. Both a Metro Health Medical Center physician and the Center's medical records described the victim's original condition and treatments made in an effort to restore her health as it was affected by the trauma to her head. Finally, two physicians from the coroner's office, as well as defendant's expert, testified with considerable specificity concerning the injuries to the victim's brain.
This case is further distinguishable from Farmer. First, the cane or crutches that inflicted the injury were recovered and presented to the jury in the case at bar. The jury had an opportunity to observe defendant to gauge his relative physical condition. It was a question of fact as to whether any of the instruments submitted into evidence was likely to produce death or serious bodily harm resulting in death when defendant used them to strike a slight, middle-aged female on top of the skull.
Second, Dr. Raaf testified that the force of the blow was so severe as to cause compression of the victim's brain and brain stem and immediate loss of consciousness and to stop her heart and breathing. When viewed in the light most favorable to the prosecution, the size of the bludgeon, the relative age and frailty of the victim, the location in which she was struck, and especially the extent of force used when the assailant struck her skull sufficiently manifest an intent to cause her death.
Accordingly, appellate counsel's second assignment of error is overruled.
 III
Appellate counsel's third assignment of error challenges the manifest weight of the evidence to support defendant's murder conviction, as follows:
THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.
This assignment lacks merit.
Defendant contends that his murder conviction is against the manifest weight of the evidence. He argues that if someone intends to beat another to death, he would strike the victim more than once and inflict more than one injury.
The Supreme Court has summarized the standard governing claims that a conviction is against the manifest weight of the evidence in State v. Thompkins (1997), 78 Ohio St.3d 380, as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction.
Id.at 387. After evaluating the evidence in compliance with this standard, we find defendant's conviction was not against the manifest weight of the evidence.
The prosecution presented a compelling mosaic of evidence, recited above, which compellingly indicated defendant's guilt. In addition, defendant repeatedly lied about what happened. He ultimately concocted a story about an unidentified Puerto Rican male in an attempt to shift the blame to someone else. This claim, however, was refuted by a neighbor who saw no such person.
The only evidence that had any tendency to support defendant was what his expert witness, Dr. Cohen, provided when he opined it would have been highly unlikely that striking the victim in the head would have caused her death. The testimony of Doctors Raaf and Steinberg to the contrary was more thorough and compelling.
Dr. Raaf conducted the autopsy and discovered the victim's brain injuries despite her having been told that the victim overdosed on drugs. The jury could properly give more weight to the comprehensive analysis a formal autopsy produces than to an opinion based on only a thirteen-minute examination of brain tissue samples. This is not the exceptional case in which the evidence weighs heavily against a conviction.
Accordingly, appellate counsel's third assignment of error is overruled.
 IV
Defendant's pro se second and third supplemental assignments of error are related and follow:
 THE TRIAL COURT'S FAILURE TO INVESTIGATE JUROR #2'S CLOSE RELATIONSHIP TO THE DECEDENT CLEARLY PREJUDICED APPELLANT'S CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT DUE PROCESS [SIC].
 TRIAL COUNSEL ERRED WHEN HE FAILED TO MOVE FOR DISMISSAL OF JUROR #2 OR MOVE FOR A MISTRIAL OR NEW TRIAL BY JUROR #2'S PARTICIPATION IN THE TRIAL AND FAILURE TO ADVOCATE APPELLANT'S DEFENSE VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
These assignments lack merit.
Defendant contends for the first time on appeal that juror number 2 was biased against him and failed to disclose prior to trial that she had a relationship with the victim. The record does not support this argument.
The victim in this case was Jonell Ficzeri. Her daughter Brandi Arlia, married to Shawn Arlia, testified at trial. After Brandi Arlia testified, juror number 2 immediately spoke to the trial judge outside the hearing of the jury. The trial judge asked counsel to approach the bench and the following colloquy occurred:
 THE COURT: Let the record reflect that we are at side bar out of the hearing of the jury. Juror number 2, Miss Graham, has indicated that while she has never spoken to the last witness, she knows her sister-in-law.
 She wanted to bring it to your attention. She indicated that it would not impact on her ability to evaluate that witness, nor would it have any impact on her decision.
 Do you have any inquiry on those points at this time?
DEFENSE COUNSEL: I do not.
THE PROSECUTOR: No.
THE COURT: All right. Miss Graham, thank you.
(Tr. 239.)
The record on appeal does not contain the voir dire of the jurors. Thus, contrary to defendant's argument, we have no basis for concluding that juror number 2 committed any type of misconduct. The victim's surname was Ficzeri. Juror number 2 was not related to the victim in any way. Moreover, learning the victim's name before trial would not put the juror on notice that she had any relationship with anyone who was going to participate in the trial.
The relationship later revealed during the course of trial was extremely attenuated. Upon hearing the victim's daughter testify, the juror immediately reported to the trial judge that she knew her sister-in-law. The juror did not say she was related by blood or affinity to the victim's daughter; the juror said merely that she was acquainted with the sister-in-law of the victim's daughter. The juror had never even spoken to the daughter of the victim.
Defendant had a full opportunity to question the juror and waived any claim of error by failing to raise it in the trial court at the time of this incident. Moreover, the record shows the juror was immediately forthcoming upon her discovery and fully disclosed this relationship. The trial court was satisfied that the juror would remain impartial, and we have no basis to disagree with its finding. Brandi Arlia's testimony was cumulative of other witnesses. Under the circumstances, defendant has not show plain error or prejudice to establish a claim of ineffective assistance of counsel.
Accordingly, defendant's pro se second and third supplemental assignments of error are overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________________ DIANE KARPINSKI, PRESIDING JUDGE
LEO M. SPELLACY, J., and JAMES D. SWEENEY, J., CONCUR.
[1] The challenged instruction in Burchfield contained the following additional provision, which was not delivered in the case at bar: "The test for foreseeability is not whether the defendant should have foreseen the injury in its precise form or as to a specific person. The test is whether a reasonably prudent person in the light of all the circumstances would have anticipated that death or injury or physical harm was likely to result to anyone from the performance of the unlawful act or failure to act." Id. at 261-262.
[2] Defendant does not argue that the jury should have been instructed to consider any other type of homicide and we do not consider any such argument.